# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Shane T.,                                                Civ. No. 18-634 (BRT)

        Plaintiff,

v.                                                   **MEMORANDUM**
                                                           **OPINION AND ORDER**
Andrew M. Saul,[1]
Commissioner of
Social Security,

        Defendant.

---

Mac Schneider, Esq., Schneider Schneider & Schneider, counsel for Plaintiff.

Linda H. Green, Esq., United States Attorney's Office, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Social Security disability insurance benefits. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 15, 17.) For the reasons stated below, Plaintiff's motion is granted in part and denied in part, and Defendant's motion is denied.

---

[1]     On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

**BACKGROUND**

Plaintiff is a high-school graduate, is married, and has step-children. (Tr. 31, 32, 195.)[2] Between 1999 and 2014, Plaintiff worked as an auto mechanic and then as a "breakdown mechanic" who repaired malfunctioning machinery at Marvin Windows and Doors. (Tr. 32–34, 228–29.) He left the Marvin Windows job in late 2014 on the advice of his doctor. (Tr. 34.) Plaintiff had reported worsening pain in his lower back and knees, along with blurred vision and limited mobility. (Tr. 34–37, 210.) At age forty-three, Plaintiff applied for benefits under Title II of the Social Security Act on May 11, 2015, alleging a disability onset date of December 1, 2014. (Tr. 71–72.)

In a decision dated February 28, 2017, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Social Security Act and denied Plaintiff's application. (Tr. 19.) The ALJ proceeded through the five-step evaluation process provided in the Social Security regulations.[3] At issue on this appeal are the ALJ's findings at step two and steps four/five as they relate to Plaintiff's Residual Functional Capacity ("RFC"). At step two, the ALJ found that Plaintiff had the following severe impairments: "(1) Seronegative Spondyloarthropathy; (2) Chronic Pain Syndrome;

---

[2] Throughout this Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 12.)

[3] *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.").

(3) Obesity; and (4) Coronary Artery Disease (CAD)." (Tr. 12.) The ALJ then addressed several impairments that she found to be non-severe (including Plaintiff's visual impairments), but did not address Plaintiff's alleged osteoarthritis.[4] Later in the disability analysis, the ALJ found that Plaintiff had the RFC to perform sedentary work, with several lifting, carrying, walking, and climbing limitations. (Tr. 14.) Key to Plaintiff's arguments on appeal are that the ALJ did not include a limitation for "occasional handling and fingering," or a limitation that would relate to Plaintiff's visual impairments. At step four, after consulting with a vocational expert, the ALJ found that a person with Plaintiff's RFC was unable to perform any past relevant work. (Tr. 18.) At step five, however, the ALJ concluded that a person with Plaintiff's RFC was able to work in certain other representative occupations that exist in sufficient regional and national markets and therefore found Plaintiff not disabled. (Tr. 18–19.)

On appeal, Plaintiff argues that the ALJ's failure to assess his osteoarthritis as severe or non-severe at step two requires remand. He also argues that, related to his osteoarthritis, the ALJ further failed to make findings regarding Plaintiff's ability to handle and finger when determining Plaintiff's RFC, and erred when evaluating the weight given to treating physician Dr. Anderson's opinion that Plaintiff could only occasionally do "handling and fingering."[5] Plaintiff argues that if proper weight is given

---

[4] Plaintiff argued in his brief to the ALJ that his "severe osteoarthritis . . . results in significant limitations with regard to the ability to handle, finger, and feel." (Tr. 269.)

[5] Dr. Anderson first treated Plaintiff on January 16, 2015, and the administrative record indicates at least twelve documented visits. (Tr. 328–32, 381–84, 386–89, 465–69, 474–76, 483–95, 498–501, 505–07, 511–18.)

3

to that opinion, then, as the vocational expert testified, a person with Plaintiff's limitations would not be able to perform the unskilled sedentary jobs identified by the ALJ at step five. Finally, Plaintiff argues that the ALJ erred in finding that his visual impairments were not severe at step two and by not including a limitation in his RFC that would properly address his visual impairments.

## ANALYSIS

### I.　Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy

that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard "allows for the possibility of drawing two inconsistent conclusions." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (concluding substantial evidence in the record supporting a contrary outcome was not enough to warrant reversal).

## II.   Step-Two Arguments

At step two, the Social Security Administration considers "the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment must meet a twelve-month durational requirement to be considered severe. *See* 20 C.F.R. § 404.1509; *see also David G. Berryhill*, No. 17-cv-3671 (HB), 2018 WL 4572981, at *1, n.2 (D. Minn. Sept. 24, 2018). "An impairment is not severe if it amounts only to a slight

5

abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of establishing that a given impairment is severe. *Id.* at 707–08 (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)).

### A. Step Two – Osteoarthritis

The ALJ did not discuss osteoarthritis as being either severe or non-severe at step two of the evaluation process. Plaintiff argues that this was reversible error. "[S]everal district courts in the Eighth Circuit, including the District of Minnesota, have concluded that an ALJ's failure to find that an impairment is severe at step two is harmless error where the ALJ otherwise finds another severe impairment exists and addresses any functional limitations caused by the overlooked impairment when determining the individual's RFC." *Misty G. v. Berryhill*, No. 18-cv-00587-KMM, 2019 WL 1318355, at *3 (D. Minn. Mar. 22, 2019) (citing cases).[6] The functional limitation that Plaintiff argues should be considered based on Plaintiff's osteoarthritis is his ability to handle and finger. A "step two error cannot be dismissed as harmless if the RFC finding omits the claimant's relevant functional limitations, and a remand would be necessary to correct the analysis." *Misty G.*, 2019 WL 1318355, at *4. Here, the ALJ's RFC finding did omit the limitation for "occasional handling and fingering" as opined by Plaintiff's treating

---

[6] *But see Tonya S.G. v. Berryhill*, No. CIV. 17-5021-JLV, 2018 WL 4441467, at *6 (D.S.D. Sept. 17, 2018) (rejecting the argument that an error at step two can be harmless); *Stewart v. Astrue*, No. 09-cv-3170, 2011 WL 338794, at *3 (W.D. Mo. Jan. 31, 2011) (citing *Nicola v. Astrue*, 480 F.3d 885 (8th Cir. 2007) for a per se rule of reversal where there is an error at step two); *Lamorte v. Astrue*, No. 3:08-cv-03040, 2009 WL 3698004, at *4 (W.D. Ark. Nov. 2, 2009) (same).

physician. As explained further below, a remand is necessary to provide good reasons for discounting Plaintiff's treating physician's opinion regarding Plaintiff's ability to handle and finger. Accordingly, the Court cannot dismiss the step-two error—assuming it was an error to not consider osteoarthritis—as harmless error. Instead, because a remand will require full consideration of Plaintiff's functional manipulative limitations, any step-two error regarding Plaintiff's osteoarthritis will be corrected at that time.

### B. Step Two – Vision Impairments

Plaintiff argues that the ALJ's dismissal of his vision impairments as non-severe at step two was error. Unlike Plaintiff's osteoarthritis, the ALJ did discuss Plaintiff's vision impairments during his step-two analysis:

> The claimant has been diagnosed with ocular hypertension and glaucoma. Exh. 5F, p. 4. He also has a history of dacryocystitis, and has undergone surgeries therefore. He underwent a dacryocystorhinostomy (DCR) in 2012, with tube removal six months later; left eye DCR in 2014, with tube removal in December 2014; and bilateral DCR in February 2015. Exh. 3F, p. 20; Exh. 5F, p. 11. However, the claimant's eye exams have been fairly normal, with full fields and visual acuity ranging from 20/20-20/30. Exh. 2F, p. 10; Exh. 14F, p. 44. While the claimant sometimes has symptoms, these generally appear to be intermittent, and in light of the ongoing and recurring normalcy of his eye exams, the undersigned concludes that the claimant's visual impairments are not severe.

(Tr. 13.)[7] In addition to the records noted by the ALJ, in March 2015, Plaintiff's treating physician stated after Plaintiff's surgery that he had not had significant eye watering. (Tr. 332.) In October 2016, another doctor noted that Plaintiff's vision could be corrected

---

[7] Plaintiff recorded a 20/25 in his right eye and a 20/20 in his left eye during a December 2014 eye exam. (Tr. 313.) In his two most recent eye exams ("visual acuity tests"), Plaintiff first recorded 20/25 (right) and 20/25 (left), and then 20/30 (right) and 20/40 (left). (Tr. 502, 508.)

with glasses and that Plaintiff reported his vision was still cloudy "at times" and he had some mucus in his eyes in the morning hours. (Tr. 508.) These records are at odds with the treating physician's notation that Plaintiff's vision was "constantly blurred." (Tr. 456.)[8]

While Plaintiff testified that he did have some ongoing problems, he also testified that he could see well enough to sort coins, that he still drove, used a computer, and spent most of his day watching television. (Tr. 42, 50.) He stated that reading is hard for him (Tr. 42), but when he looked at a keyboard, he could tell the difference between the letters. (Tr. 58.) Plaintiff did have a chronic eye infection, but the record reflects his tube removal surgeries in December 2014 and March 2015 helped his eye health. (Tr. 278, 284, 335, 343–44, 508.) And while Plaintiff at times mentioned itching in his eyes, there is no evidence indicating this was severe. The ALJ may disbelieve Plaintiff's subjective complaints if there are inconsistencies in the evidence as a whole. *Strongson v. Barnhart*, 361 F.3d 1066, 1070–72 (8th Cir. 2004). And, as stated above, "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707. Here, there is evidence in the record indicating Plaintiff had problems with his eyesight, and sometimes it was worse than others; but there is also substantial evidence in the record supporting the ALJ's conclusion that Plaintiff's visual impairments were non-

---

[8] Two reviewing physicians authored Disability Determinations, and both recognized Plaintiff's glaucoma issues and past eye surgeries. (Tr. 74–76, 86–90.) Nonetheless, both physicians answered "No" to the "Does the individual have visual limitations?" question. (*Id.*)

severe. If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently). Therefore, the Court will not disturb the ALJ's step-two findings regarding Plaintiff's vision impairments.

### III. RFC Arguments

The ALJ's RFC determination is "an assessment of what [Plaintiff] can and cannot do, not what he does and does not suffer from." *Mitchell v. Astrue*, 256 F. App'x 770, 772 (6th Cir. 2007); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's "residual functional capacity is the most [he] can still do despite [his] limitations"); *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (defining RFC as "the most a claimant can still do despite his or her physical or mental limitations") (quotations omitted). The ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quotations omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quotations omitted).

Here, the ALJ determined that Plaintiff's RFC included performing sedentary work except only with the following limitations:

9

> [T]he claimant can lift and/or carry 10 pounds occasionally and less that 10 pounds frequently; can sit for 6 out of 8 hours; can stand or walk for 2 out of 8 hours; can occasionally climb ramps and stairs; can never climb ropes, ladders, and scaffolds; can occasionally balance, kneel, stoop, crouch, and crawl; and cannot tolerate exposure to unprotected heights and moving mechanical parts.

(Tr. 14.)

### A. Handling and Fingering

Plaintiff argues the ALJ erred by failing to make *any* findings regarding Plaintiff's ability to handle and finger as part of the RFC finding. This is incorrect. Although the ALJ did not provide a specific analysis regarding Plaintiff's ability to handle and finger, the ALJ did acknowledge that Plaintiff had "soft tissue swelling in the hands and wrists" and he had "7-10 pounds of grip strength." (Tr. 16.) In addition, the ALJ did mention Plaintiff's treating physician Dr. Anderson's opinion that Plaintiff could "occasionally handle, finger and feel." (Tr. 17.) Therefore, this argument made by Plaintiff fails.

Plaintiff next contends, however, that the ALJ's RFC determination, which did not include a limitation for handling and fingering, was not supported by substantial evidence in the record. Specifically, Plaintiff argues that the ALJ improperly failed to give controlling weight to Plaintiff's treating physician, Dr. Anderson, who opined that Plaintiff was limited to "occasional handling and fingering." (Tr. 456.) Plaintiff asserts Dr. Anderson's opinion was "well-supported by objective grip testing and consistent with other evidence of record." (Doc. No. 16, Pl.'s Mem. in Supp. of Summ. J. 7–8 (citing Tr. 277, 280, 284, 316).)

The SSA regulations generally give treating physicians' opinions greater weight than non-treating sources. 20 C.F.R. § 404.1527(c)(2); *see Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018). Treating physicians' opinions "receive controlling weight if they are well-supported by the medical evidence and are 'not inconsistent with the other substantial evidence in [the] case record.'" *Walker*, 911 F.3d at 553 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Regardless of the weight an ALJ assigns an opinion, they "must give good reasons for doing so." *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996) (stating that notice of denial "must contain specific reasons for the weight given to the treating source's medical opinion"). "Good reasons" for lesser weight include internal inconsistency and other physicians' opinions offering better medical evidentiary support. *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

Here, the ALJ gave Dr. Anderson's opinion "little weight," stating that it was "not consistent with Dr. Anderson's exam findings, nor the exam findings of other providers. It is not consistent with the claimant's objective diagnostic studies, which have generally revealed mild abnormalities." (Tr. 17.) The ALJ did not elaborate further. She did not state which of the exam findings were inconsistent, nor did she indicate what other providers she was referring to. She also did not indicate which diagnostic studies she was referring to that revealed mild abnormalities, or even which abnormalities she was

referring to, leaving the reader questioning whether she was referring to manipulative functioning, or some other abnormality that Dr. Anderson referred to.[9]

The ALJ also stated that Dr. Anderson's "opinion is not clearly explained or supported by persuasive rationale." (Tr. 17.) An ALJ may assign little weight to a treating physician's opinion if the opinion is conclusory. *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). A conclusory opinion is one that is "not supported by medical diagnoses based on objective evidence." *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). However, when a physician's opinion is conclusory, the ALJ should examine the underlying medical record to determine whether it supports the conclusory opinion. *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019). If it does, the conclusory opinion "may still be entitled to controlling weight." *Id.* In this case, the ALJ provided no explanation, beyond general statements, for why the underlying medical record does not support Dr. Anderson's opinion.

Without more, the ALJ has not provided a good reason for affording Dr. Anderson's opinion little weight. An ALJ must explain, "with some specificity, why he has rejected the treating physician's opinion." *Walker*, 911 F.3d at 553. Here, the ALJ did not do so. "Failure to provide a good reason for discrediting a treating physician's opinion is grounds for remand." *Harles-Wilson v. Berryhill*, No. 16-cv-02758 (FLN),

---

[9] In his response, the Commissioner points to diagnostic studies of Plaintiff's right knee, pelvis, and lumbar spine. (Doc. No. 18, Def.'s Mem. in Supp. of Mot. for Summ. J. 12.) The Court finds these inapposite, as none of them relate to Plaintiff's ability to handle or finger.

2018 WL 1525728, at *5 (D. Minn. Mar. 28, 2018) (citation omitted); *see also Mai V. v. Berryhill*, No. 17-cv-04347 (ECT/DTS), 2019 WL 1281889, at *2 (D. Minn. Mar. 20, 2019); *Ording v. Colvin*, No. 11-2296 (MJD/LIB), 2013 WL 2139498, at *3 (D. Minn. Apr. 29, 2013), report and recommendation adopted, 2013 WL 2139497 (D. Minn. May 15, 2013) (remanding because an ALJ improperly discounted the medical opinions of a treating physician without sufficient reasons); *Singh v. Apfel*, 222 F.3d 448, 452–53 (8th Cir. 2000) (reversing in part because the ALJ failed to give good reasons for rejecting a treating physician's opinion). Therefore, the Court remands this matter to the Commissioner to evaluate Dr. Anderson's opinion and provide good reasons, with some specificity, for the weight accorded to this treating physician's opinion. The ALJ should then reconsider the RFC conclusion and determinations at steps four and five.[10]

### B. Vision Impairments

Plaintiff contends that the ALJ also erred by failing to make *any* findings with regard to his vision limitations when determining his RFC. This assertion is incorrect. The ALJ did acknowledge that Plaintiff "has scarring in his eye and blurry vision," and that he "has problems reading." (Tr. 15.) As stated above, substantial evidence in the record supported the ALJ's determination that Plaintiff's vision impairments are non-

---

[10] The vocational expert testified that an individual with the RFC as determined by the ALJ would be able to perform the requirements of representative occupations such as jewelry repairer, lens inserter, and final assembler. (Tr. 19, 60–61.) The vocational expert also testified that if the limitation of occasional handling and fingering were added to that RFC, it would preclude those jobs. (Tr. 62–63.) This is consistent with Social Security Ruling 96-9p, which states that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity." 1996 WL 374185, at *8 (July 2, 1996).

13

severe. Although an ALJ should consider both severe and non-severe impairments when determining a claimant's RFC, if the record does not support limitations from the non-severe impairment, the ALJ need not account for the impairment. *See Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004) (finding the "ALJ's decision not to incorporate [the] mild pulmonary dysfunction in the RFC, as well as in the hypothetical posed to the VE, was not error because the record [did] not suggest there were any limitations caused by this nonsevere impairment"). Here, it is evident that the ALJ considered Plaintiff's vision impairments because he asked the vocational expert a hypothetical that included limitations relating to vision impairments.[11] And, substantial evidence in the record indicated that Plaintiff's eye problems were not continuous, could be treated with glasses, and that they had improved. Therefore, the ALJ did not err by not including a limitation in the RFC that would relate to Plaintiff's vision impairments.

## ORDER

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 15) is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 17) is **DENIED**; and

---

[11] The vocational expert testified that if he added a limitation where the person would be unable to read ordinary book print or newsprint to the hypothetical, but would be able to see small objects or small parts, the person would still be able to do the assembly jobs identified. (Tr. 61.)

3. This matter be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Memorandum Opinion and Order. On remand, pursuant to 20 C.F.R. § 404.1527, the ALJ should evaluate Dr. Anderson's opinion regarding Plaintiff's functional limitations, and in particular his opinion relating to Plaintiff's manipulative limitations, and give good reasons for the weight accorded to this treating physician's opinion. The ALJ should then reconsider the RFC determination and conclusions at steps four and five.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: August 30, 2019

*s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge